UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22987-CIV-KING/BANDSTRA

TRECO INTERNATIONAL S.A. and
TRECO INTERNATIONA LTD.,

    Plaintiffs,

vs.

RICHARD KROMKA and FRANCOIS
RODRIGUE,

    Defendants.
_____/

## DEFENDANT RICHARD KROMKA'S MOTION TO DISMISS
## AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, Defendant Richard Kromka hereby moves to dismiss the Verified Complaint filed by Plaintiffs, Treco International, S.A. and Treco International, Ltd. (collectively, "Plaintiffs" or "Treco"), [D.E. 1] in its entirety. In support thereof, Mr. Kromka states as follows:

### INTRODUCTION

On October 5, 2009, Plaintiffs filed a Verified Complaint for Injunctive Relief against Defendants Mr. Kromka and Francois Rodrigue (the "Complaint"). [D.E. 1.] The Complaint asserts seven counts related to Mr. Kromka and Mr. Rodrigue's prior employment with Treco, including misappropriation of trade secrets under Florida's Uniform Trade Secrets Act [Count I]; breach of fiduciary duty and duty of loyalty [Count II]; aiding and abetting breach of fiduciary duty [Count III]; tortious interference with contracts [Count IV]; tortious interference with advantageous business relationships [Count V]; unjust enrichment [Count VI]; and fraud and deceit [Count VII]. The allegations in the Complaint are insufficient and do not support even

one of the asserted causes of action against Mr. Kromka, and he moves to dismiss the Complaint for failure to state a cause of action upon which relief can be granted.

## SUMMARY OF ARGUMENT

The Complaint fails to state an actionable claim for relief. Plaintiffs' claim of misappropriation of trade secrets must be dismissed because the Complaint fails to demonstrate a colorable factual or legal basis for that claim. The remaining counts should likewise be dismissed to the extent the counts have as their factual predicate the same allegations of misappropriation—and each does in whole or in part. The other counts also suffer from other infirmities as well, as described in this motion.

<u>Failure to Allege Existence of Confidential Information</u>. The allegedly confidential information central to the Complaint is never described. Rather, Plaintiffs rely on broad categories of data such as the "structure, marketing, and technical feasibility of the xMax network" and assert that these were not available to the general public. It appears, to the contrary, that the data described was freely and publicly disseminated by xG Technology, Inc. ("xG") itself. Moreover, although ¶ 58 of the Complaint asserts that Plaintiffs "made reasonable efforts under the circumstances to maintain the secrecy of Treco's [sic] Confidential Information," this conclusory allegation is unsupported by any ultimate facts. The only actual act Treco alleges was made to protect the (unidentified) confidential information from public disclosure was the execution of a nondisclosure agreement in January 2009 between Plaintiff Treco International[1] and xG. The nondisclosure agreement, attached to the Complaint as Exhibit B, requires a specific course of action to be followed whenever information is to be treated as confidential. These specific steps are set forth in ¶ 1.4 of the nondisclosure agreement. There is no allegation that xG complied with these steps in disclosing any information to Treco International. This is a critical omission in the Complaint because, as the nondisclosure agreement states: "Information that is not designated as Confidential Information in accordance

---

[1] The nondisclosure agreement, attached as Exhibit B to the Complaint, does not identify the full name of the party signing as "Treco International."

with the terms of this section shall not be considered Confidential Information." (*See* Compl. Ex. B ¶ 1.4.) An essential element of a Chapter 688 claim is therefore missing.

<u>Breach of Fiduciary Duty and Duty of Loyalty; Aiding and Abetting Breach of Fiduciary Duty</u>. Counts II and III accuse Mr. Kromka of breaching a fiduciary duty and duty of loyalty to Plaintiffs, and aiding and abetting each other's breach of their fiduciary duty. These counts fail for the same reasons outlined above to the extent such breaches were allegedly caused by the disclosure of the unidentified confidential information. The Complaint also fails to allege by whom Mr. Kromka was employed, and thus, fails to establish to whom a fiduciary duty was owed, if owed at all. The only other basis for the claimed breach is that Mr. Kromka diverted a corporate opportunity from his employer by dealing with Beechtree Capital, Ltd. and "use[d] Beechtree to raise financing for a separate company that they would form independent of Treco to deploy the xG base station network." (Compl. ¶ 30.) As discussed below, these allegations fail to state a claim for relief based on Plaintiffs' own admission that the course of conduct that Plaintiffs complain of was "introduced by Beechtree," and not by either Defendant. (*Id.*, ¶ 34.)

<u>Tortious Interference</u>. Counts IV and V attempt to state claims against Mr. Kromka for interfering with, respectively, Plaintiffs' contract with xG and certain advantageous business relationships. Both counts are barred as a matter of law because Plaintiffs fail to allege that xG breached its contract with Plaintiffs, and because Mr. Kromka was not an unrelated third party but rather was hired to manage the very contractual and business relationships with which Plaintiffs now claim he interfered. Moreover, even under pre-*Twombly* pleading standards, these allegations are far from sufficient to state claims cognizable by this Court. Likewise, Count V, which contends that Mr. Kromka interfered with advantageous business relationships between Plaintiffs and anonymous "funding sources for the xMax network in furtherance of the Infrastructure Agreement," cannot state a claim. At a minimum the alleged sources must be identified so that Mr. Kromka can know what is being alleged, and defend himself. Counts IV and V simply do not state claims for relief.

<u>Unjust Enrichment</u>.  In perhaps the most peculiar count in the Complaint, Plaintiffs claim that Mr. Kromka has been unjustly enriched, presumably by "retaining" confidential information.  No specifics to that effect are alleged however; Plaintiffs merely assert the conclusory allegation that Mr. Kromka has been enriched "as a result of the aforesaid [sic] wrongful actions." (*Id.*, ¶ 88.)  If in fact Plaintiffs are referring to the information that has already been returned, and which Mr. Kromka has offered to delete from his computer in view of the secure image being maintained by his counsel, they should so allege—although Mr. Kromka would still maintain that under the circumstances this would not state a claim for relief.

<u>Fraud</u>.  The final count in the Complaint purports to be for fraud.  It is justly last in the pleading, as it lacks even a modicum of the particularity required by Rule 9(b) to state such a claim.  It, illogically, incorporates every single one of the preceding 89 counts of the Complaint.  Presumably Mr. Kromka and his counsel are expected to sift through each of those counts, discard the ones that plainly could not constitute a fraud allegation, and respond only to those that may.  This is not what Rule 9(b) requires.  If Plaintiffs have a fraud claim to make, or think they do, they should be directed to attempt to make one in accordance with the rules of civil procedure.  Additionally, to the extent that Plaintiffs' fraud claim is based on Mr. Kromka's performance of the parties' employment agreement, the claim is barred by Florida's economic loss rule since it is not based on an independent tort.

## ARGUMENT

### I. STANDARD OF REVIEW FOR MOTION PURSUANT TO RULE 12(b)(6)

A defendant may move to dismiss a complaint where the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  The Court is limited to the four-corners of a complaint (and those matters of which it may take judicial notice) and the allegations therein must be accepted as true and viewed in the light most favorable to the plaintiff when determining the merits of a motion to dismiss for failure to state a cause of action. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Watts v. FIU,* 495 F.3d

1289, 1295 (11th Cir. 2007); *but see Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (noting that courts are not bound to accept as true legal conclusions couched as factual allegations). When reviewing the allegations, the Court must consider both whether the plaintiff would be entitled to relief, and whether the complaint alleges all essential elements necessary to bring each cause of action. Mere labels, conclusory allegations, and formulaic recitation of the elements of a cause of action are not enough. *Twombly,* 550 U.S. at 555.

## II. THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A. The Allegations In Count I Do Not Support A Cause Of Action Under Florida's Uniform Trade Secrets Act

To bring a claim for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act ("FUTSA"), Florida Statutes §§ 688.001 *et seq.*, a plaintiff must allege that: (i) it possessed secret information and took reasonable steps to protect secrecy of that information, and (ii) the secret was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. Fla. Stat. § 688.02 (2009); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001). The information must derive economic value from not being generally known or readily ascertainable by third parties. *Monte Fresh Produce Co.,* 136 F. Supp. 2d at 1291; *see Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313-14 (11th Cir. 2001). Thus the party claiming misappropriation of trade secret information bears the dual burden of describing the alleged trade secret information with particularity as well as showing that it has taken reasonable steps to protect this secrecy. *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1286-87 (S.D. Fla. 2007).

### 1. Plaintiffs fail to describe the trade secret information allegedly misappropriated with any particularity.

Not one allegation in Count I identifies the information that Plaintiffs claim was misappropriated. Instead, Plaintiffs rely upon a mere formulaic recitation of the elements of a claim for misappropriation. Indeed, the only allegations remotely specific to this issue are confined to paragraphs 24 and 25 of the Complaint, which state that Mr. Kromka became familiar with the development, structure, feasibility, and marketing of the xMax network and timing of its release. (Compl. ¶¶ 24-25.) However, Plaintiffs do not allege that the information relating to the development, structure, feasibility, and marketing of the xMax network and timing of its release was the information that was misappropriated. And Mr. Kromka's mere familiarity with such information does not automatically equate to a misappropriation.

Thus Count I is insufficient as a matter of law and should be dismissed because the allegations therein fail to describe the trade secret information with particularity. *See Levenger Co.*, 516 F. Supp. 2d at 1286-87.

### 2. The information related to xMax does not constitute a trade secret because it is generally known and accessible by third parties.

To the extent that Plaintiffs are claiming that the information related to the development, structure, feasibility, and marketing of the xMax network and timing of its release is the information that was misappropriated, that information was available to and accessible by the general public. xG issued press releases discussing this exact information. For example, xG issued a press release back on January 14, 2008, that stated:

> xG Technology, Inc. has developed innovative, patented wireless communications technologies which offer the potential to significantly reduce the required capital investment and operating costs of wireless voice and data communications services.
>
> . . . xG Technology has designed a mobile VoIP (Voice over Internet Protocol) base station and handset product line. Branded

>as xMax, these products are for use by regional carriers (internet service providers, competitive local exchange carriers and entrepreneurial parties) seeking to deliver mobile Internet Protocol services directly to consumers without using the incumbent circuit switched or coaxial cable networks. Future releases of the xMax product line will expand from mobile VoIP to offer integrated video and data applications

xG Techonology, Inc., http://www.xgtechnology.com/news_pr_1_19_09.asp (last visited Nov. 10, 2009).[2] In that same release, xG announced that:

>[It] believes that xMax is a viable solution for mobile VoIP for a number of reasons:
>
>- xMax is an IP solution rather than a circuit switched solution; this is a prerequisite for handling the VoIP application;
>- xMax delivers high speed data in the order of Mbps rather than Kbps, which is essential for supporting large numbers of subscribers;
>- xMax has a low latency physical layer, resulting in high network efficiency;
>- xMax's signal profile also allows for improved range/coverage and better signal penetration, which is essential for maintaining call session reliability; and
>- although this feature is not central to the VoIP application itself, xG Flash Signal's ability to deliver wireless signals with far less RF output power than conventional applications means that wireless VoIP handsets will show improved battery life over other solutions.

xG's January 14, 2008 press release was subsequently reprinted by various media outlets which further discussed details of xG and the xMax products. *See, e.g.*, Interactive Investor, http://www.iii.co.uk/investment/detail?code=cotn:XGT.L&display=news&action=article&articleid =6489320 (last visited Nov. 10, 2009); *see also* Patrick Barnard, *xG Announces Field Trials of its xMax Techonology*, TMCnet, Aug. 3, 2009, http://fixed-mobile-convergence.tmcnet.com/topics/mobile-communications/articles/61281-xg-announces-field-trials-its-xmax-

---

[2] The defendant respectfully suggests that the Court may take judicial notice of the fact of this publication and those cited below pursuant to Federal Rule of Evidence 201, because the fact of these instances of publicity are readily determinable by resort to the cited sources.

technology.htm (chronicling the history of public announcements of the deployment and marketing by xG) (last visited Nov. 11, 2009); Review of xG Technology, http://xgtechnologyscam.blogspot.com (posting slides regarding xMax Dealer Program and discussing the timing, deployment, and feasibility of the xMax technology) (last visited Nov. 10, 2009).  Furthermore, xG's CEO, Rick Mooers, publicly discussed details of xG's product, marketing, and deployment plans.  He was quoted as saying that xG's "patented technologies" would assist in offering

> high call Quality of Service while using free, unlicensed spectrum available in the United States and several other markets across the world, instead of extremely costly licensed spectrum. These attributes make xMax an extremely cost-efficient communications approach, allowing benefits and opportunities for a number of different types of providers, including incumbent carriers, competitive local exchange carriers, mobile operators, original equipment manufacturers, content providers and infrastructure mobile virtual network enablers. Highlighting this is our recent announcement that, alongside Townes Tele-Communications, Inc., the Company is talking to a number of parties interested in deploying xMax both in the US and internationally. To this end, the Company's strategy has been focused on expanding its relationships with major potential carrier partners, with the expectation that they will be interested in deploying xMax across the whole of a national market or sizable regional markets.

Interactive Investor, http://www.iii.co.uk/investment/detail?code=cotn:XGT.L&display=news&it=le (last visited Nov. 11, 2009).  Hence the information here could not have been secret since it was previously provided to various media outlets and other reporting services.

Along those same lines, it is axiomatic that patented technology cannot be considered a trade secret since it is necessarily in the public domain. *See Tedder Boat Ramp Sys., Inc. v. Hillsborough County, Fla.*, 54 F. Supp. 2d 1300, 1303 (M.D. Fla. 1999) (*citing Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) and *Keystone Plastics, Inc. v. C&P Plastic, Inc.*, 340 F. Supp. 55 (S.D. Fla. 1972)).  Thus to the extent that Count I is based upon disclosure

15879123.3                                                8

of technology owned by xG for which a patent has been approved (or is pending), that information cannot be deemed a trade secret.

Accordingly, Count I should be dismissed because Plaintiffs have not articulated an actionable right to seek the Court's protection under FUTSA since the xMax information was widely disseminated and discussed, and thus, does not constitute a trade secret.

### 3. Plaintiffs have not taken reasonable steps to protect the information.

Plaintiffs fail to show through detailed factual allegations that they consistently treated the alleged trade secrets as closely guarded secrets. Plaintiffs' allegations are bare-boned in this regard. Count I simply alleges that "Plaintiffs have made reasonable efforts under the circumstances to maintain the secrecy of Treco's Confidential Information."[3] (Compl. ¶ 58.) Plaintiffs do not describe what specific actions they took, if any, to maintain the secrecy of the unspecified confidential information. The fact that the details regarding xMax were the subject of press releases by xG and widely discussed over the internet, evidence that the information was not a closely-guarded secret.

The sole example Plaintiffs provide of their efforts to maintain secrecy of the information is the Bilateral Non-Disclosure Agreement ("BNDA"). (Compl. ¶ 27.) However, the BNDA was an agreement solely between "Treco" and xG, as Plaintiffs admit. (*Id*.) Mr. Kromka was not a party to the BNDA, nor do Plaintiffs allege that Mr. Kromka was bound by it in any way. Furthermore, Plaintiffs do not even allege that they required all of their employees to enter into a confidentiality agreement, and thus, do not get the benefit of an inference that reasonable steps were taken to protect the information with regard to Defendants. *See Contrast Mai Sys. Corp. v. Peak Computers, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (noting that a company's mandate that

---

[3] Plaintiffs even qualify this to be reasonable "under the circumstances," but fail to specify the circumstances under which this Court should analyze their reasonable efforts.

employees sign a confidentiality agreement respecting its trade secrets constitutes "reasonable steps" to maintain secrecy of confidential information).

Plaintiffs, therefore, fail to satisfy their initial burden of showing that they took reasonable steps to protect the secrecy of the unspecified information. Consequently, Count I is properly dismissed on these grounds.

### 4. Plaintiffs fail to demonstrate a misappropriation of any trade secrets.

The Complaint alleges that Mr. Kromka disclosed unspecified, confidential information to unauthorized third parties. (Compl. ¶ 60.) Again, to the extent Plaintiffs' claim is based upon disclosure of the xMax information, the claim fails because the xMax information does not constitute a trade secret as a matter of law, *see* discussion *supra* Part II.A.3, and thus, could not be misappropriated. In addition, and similar to the trade secret information, Plaintiffs fail to identify the "unauthorized third parties" anywhere in the Complaint. Thus there is no basis for Mr. Kromka to decipher the conduct being sued upon, or to determine if the third parties to whom the unspecified information was allegedly disclosed were in fact "unauthorized."

Accordingly, Count I should also be dismissed for failure to properly allege that a trade secret was misappropriated.

### B. Counts II And III Are Not Supported By Any Factual Allegations

"The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Border Collie Rescue, Inc. v. Ryan,* 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006) (*citing Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002)). While directors and officers of a corporation owe a duty of care and a duty of loyalty to the corporation, not every employee/employer relationship gives rise to a fiduciary duty. *See Cheney v. IPD Analytics, LLC*, 2009 WL 1298405, at *4 (S.D. Fla. Apr. 16, 2009) (citations omitted). Further, claims involving the internal affairs of corporations,

such as the breach of a fiduciary duty, are subject to the laws of the state of incorporation. *Mukamal v. Bakes*, 383 B.R. 798, 816-17 (S.D. Fla. 2007); *see also* Fla. Stat. § 617.1505 (noting that the act does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to conduct its affairs in this state).  Thus conclusory allegations that a fiduciary relationship exists, without any supporting factual allegations, are insufficient to state a claim breach of fiduciary duty. *See Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179-80 (M.D. Fla. 2005).

Plaintiffs' allegations here, as throughout the Complaint, are woefully insufficient.  To begin with, Counts II and III fail for the same reasons outlined earlier in this memorandum to the extent such breaches are based on the disclosure of any unidentified, alleged confidential information. *See* discussion *supra* Part II.A.  Counts II and III also fail because the allegations therein do not assert what corporate entity employed Mr. Kromka, and thus, to what entity he owed a fiduciary duty.  Plaintiffs allege that Mr. Kromka accepted employment with "Treco" (Compl. ¶ 16); however, Plaintiffs are collectively referred to as "Treco" throughout the Complaint (*Id*. at 1).  There is no indication if "Treco" means Treco International S.A., Treco International Ltd., or even Treco Networks, LLC – all of whom are incorporated outside of Florida. (*Id.*, ¶¶ 3-4).  Although Plaintiffs attempt to blur the distinction, the difference is vital in determining the applicable law governing Counts II and III.  Thus Counts II and III fail to assert a cause of action as a matter of Florida law. *See Am. Honda Motor Co.*, 390 F. Supp. 2d at 1179-80.

Along the same lines, the Complaint's allegations as to Mr. Kromka's relationship to "Treco" are inconsistent and unclear.  Although Plaintiffs allege that Mr. Kromka served as CEO of "Treco's U.S. operations," Plaintiffs also expressly allege that Mr. Kromka's title was

changed to "U.S. Representative." (Compl. ¶¶ 15-16, 18.) In addition, the Complaint contends that Ceinwen Lloyd, not Mr. Kromka, served as the Chief Executive Officer of Treco International. (Compl. ¶ 16.) Thus Plaintiffs' own allegations indicate that Mr. Kromka was not in fact an officer or director, but rather was simply an employee. If that is the case, it cannot be inferred or concluded that Mr. Kromka owed a fiduciary duty to whatever entity Plaintiffs claim employed him. *See Cheney*, 2009 WL 1298405, at *4.

Lastly, Counts II and II fail because the course of conduct complained of, according to Plaintiffs' allegations, was instigated by non-party, Beechtree Capital, Ltd. ("Beechtree"), not Mr. Kromka. Plaintiffs allege that Mr. Kromka diverted a corporate opportunity from his employer by dealing with Beechtree and "seeking to use Beechtree to raise financing for a separate company that they would form independent of Treco to deploy the xG base station network." (Compl. ¶ 30.) Plaintiffs go on to argue, however, that Mr. Mooers concluded that it was Beechtree's objective to cut "Treco" out of the deployment deal with xG. (*Id.*, ¶ 36.) Mr. Kromka has no fiduciary duty to control, nor could he, the conduct of any other third-party, including Beechtree.

Accordingly, Count II should be dismissed to the extent it relies upon Count I, and for failure to establish the existence of a fiduciary owed, and therefore, sufficiently to allege a breach of that duty. Since Count III necessarily depends on the viability of Count II, it also fails for failure to allege a cause of action upon which relief can be granted.

### C. Counts IV And V Are Barred As A Matter Of Law

#### 1. Plaintiffs fail to allege in Count IV that xG breached the Infrastructure Agreement.

The elements of tortious interference with a contract are: (i) the existence of a contract; (ii) the defendant's knowledge of the contract; (iii) the defendant's intentional procurement of

the contract's breach; (iv) the absence of any justification or privilege; and (v) damages resulting from the breach. *Special Purposes Accounts Receivable Coop. Corp. v. Prime One Capital Co., LLC*, 125 F. Supp. 2d 1093, 1103 (S.D. Fla. 2000) (*citing Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1321 (11th Cir.1998)). Thus to sustain a cause of action for tortious interference with a contract, a plaintiff must allege a breach of the alleged contract. *Prime One Capital, Co.*, 125 F. Supp. 2d at 1103; *Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1228 (Fla. 1st DCA 2005).

Here, Plaintiffs make a cursory allegation that Mr. Kromka "interfered with Treco's rights under the Infrastructure Agreement with xG," and as result Plaintiffs have been damaged. (Compl. ¶¶ 76, 78.) As previously noted, formulaic recitation of the elements of a cause of action are not enough under *Twombly*. Putting that deficiency aside, Count IV fails because Plaintiffs do not allege that xG breached the Infrastructure Agreement. Since Plaintiffs fail to allege a breach they cannot allege that they suffered damages as a result of a breach.

Accordingly, Count IV fails and should be dismissed because it fails to set forth the requisite elements to sustain a cause of action for tortious interference with a contract.

### 2. Plaintiffs cannot allege that Mr. Kromka interfered with Plaintiffs' investor relationship because Mr. Kromka was charged with development of those relationships.

To assert a cause of action for tortious interference with a business relationship, a plaintiff must allege: (i) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (ii) knowledge of the relationship on the part of the defendant; (iii) an intentional and unjustified interference with the relationship by the defendant; and, (iv) damage to the plaintiff as a result of the breach of the relationship. *Murphy v. City of Aventura*, 2008 WL 4540055, at *10 (S.D. Fla. Oct. 10, 2008); *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009). The defendant must be a stranger to the

business relationship for the interference to be unjustified. *Murphy*, 2008 WL 4540055, at *10; *Prof'l Med. Educ., Inc.*, 13 So. 3d at 1094. A defendant is not a stranger to the business relationship if the defendant has any control over the relationship, or a supervisory interest in how the relationship is managed. *Murphy*, 2008 WL 4540055, at *10.

In the instant case, Plaintiffs fail to allege an unjustified interference with a business relationship because Mr. Kromka was not a stranger to the alleged investor business relationships. The Complaint alleges that Mr. Kromka's primary duty was to develop equity and investment in xG (i.e., pursue financing opportunities for the deployment of xMax). (Compl. ¶¶ 16, 82.) Thus, he was specifically charged with finding potential investors and developing those relationships. As a result, Mr. Kromka's involvement with any investor business relationships cannot, as a matter of law, be unjustified.

The allegations in Count V are also insufficient as a matter of law. Plaintiffs allege the existence of advantageous business relationships with funding sources. (Compl. ¶ 82.) Much like various allegations throughout the remainder of the Complaint, Plaintiffs say a lot without saying anything. Paragraph 82, besides being conclusory, does not identify who the "funding sources" are with whom they have advantageous business relationships. In fact, nowhere throughout the 94 allegations in the Complaint are any of the "funding sources" identified in any way. Plaintiffs' bare-bones recital of the elements for tortious interference with an advantageous business relationship is inadequate not only under the *Twombly* standard, but also under *Conley v. Gibson*, 355 U.S. 41 (1957), and its progeny.

Accordingly, Count V should be dismissed given the scope of Mr. Kromka's duties and the count's failure to set forth sufficient factual allegations to support the cause of action.

**D.     Count VI Fails To Allege The Essential Elements Necessary To Assert A Cause Of Action For Unjust Enrichment**

To establish a claim for unjust enrichment, Plaintiffs must allege that: (i) a benefit was conferred upon Mr. Kromka by Plaintiffs; (ii) Mr. Kromka accepted and retained the benefit; and (iii) under the circumstances, it would be inequitable for Mr. Kromka to retain the benefit without paying the value thereof. *See Fla. Power Corp. v. City of Winter Park*, 87 So. 2d 1237, 1241 n.4 (Fla. 2004).

Count VI is a complete mystery. Paragraph 87 realleges each and every allegation in the preceding 86 paragraphs. Plaintiffs make no attempt to set forth what "benefit" was conferred upon Mr. Kromka by Plaintiffs, nor to provide any facts demonstrating that Mr. Kromka accepted and retained such benefits.[4] Rather, Plaintiffs have taken the kitchen-sink approach, and impermissibly have attempted to shift their burden to Mr. Kromka to sift through the various allegations to determine exactly what Plaintiffs are attempting to allege. Plaintiffs have provided no notice of what they are alleging, and such a conclusory count should be summarily dismissed under *Twombly*.

**E.     Counts VII Fails To State A Cause Of Action For Fraud**

    **1.     Plaintiffs fail to assert the ultimate facts and circumstances constituting the alleged fraud with specificity and particularity.**

Under Florida law, in order to state a cause of action for fraud, a plaintiff must show: (i) a false statement of fact; (ii) known by the defendant to be false at the time that it was made; (iii) made for the purpose of inducing the plaintiff to act in reliance thereon; (iv) the plaintiff justifiably relied on the correctness of the representation; and (v) resulting damage or injury.

---

[4] To the extent that Count VI asserts that Mr. Kromka was overpaid or failed to provide contracted-for services, Plaintiffs' claim would be a claim for breach of contract, not unjust enrichment. *Cf. Ocean Comm'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) (noting that a party may not pursue recovery for unjust enrichment where an express contract exists concerning the same subject matter).

*Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1275 (S.D. Fla. 2007) (*citing Nat'l Ventures, Inc. v. Water Glades 300 Condo. Ass'n*, 847 So. 2d 1070, 1074 (Fla. 4th DCA 2003)); *First Union Brokerage v. Milos*, 717 F. Supp. 1519, 1524-25 (S.D. Fla. 1989). With respect to the first element, the plaintiff must plead specific facts — who, what, where, when, and how. *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001); Fed. R. Civ. P. 9(b). Merely alleging that the statements were false is insufficient under the strict pleading standards for fraud. Furthermore, the element of damages must be pleaded using specific, ultimate facts. *Neuman v. Travel Holdings, Inc.*, 2008 WL 516709, at *2 n.2 (M.D. Fla. Feb. 22, 2008); *Simon v. Celebration Co.*, 883 So. 2d 826, 833 (Fla. 5th DCA 2004). "[F]raud cannot form the basis for recovery of damages unless the damages directly arise from the fraud and are causally connected to the fraud." *Neuman*, 2008 WL 516709, at *2 n.2 (*citing Rolls v. Bliss & Nyitray, Inc.*, 408 So. 2d 299 (Fla. 3d DCA 1981)).

Here, Plaintiffs fail to properly plead the allegations of fraud. Similar to Count VI, Plaintiffs reallege each and every allegation in the preceding 89 paragraphs. Despite the inclusion of over 89 paragraphs in the fraud count, Plaintiffs fail to set forth allegations with the specificity and particularity required under Rule 9(b). *See Ziemba,* 256 F.3d at 1202; Fed. R. Civ. P. 9(b). Count VII, like the other claims, consists entirely of generalities and insinuations.

Plaintiffs make the broad allegation that Mr. Kromka misrepresented how he was spending "Treco time and resources," the reasons for certain expenditures, and the purpose of his interaction with potential investors. (Compl. ¶ 91.) However, nowhere in the Complaint do Plaintiffs state when the representations were made or even how they were false. Plaintiffs also make the broad allegation that they were harmed because they continued to employ and pay Mr. Kromka. (*Id.*, ¶ 92.) Again though, the Complaint fails to allege or demonstrate that Plaintiffs'

reliance was justifiable. All of Count VII's allegations are conclusory and unsupported by any ultimate facts, and thus, are too vague to support a cause of action for fraud. *See Simon*, 883 So. 2d at 833.

### 2.   Count VII is barred by Florida's Economic Loss Rule.

Even assuming Plaintiffs' allegations were sufficiently informative, they cannot support a cause of action for fraud. The economic loss rule bars tort actions where the parties are in contractual privity and the damages sought arise from the parties' contract. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). Thus to maintain a tort action where the parties are in a contractual relationship, a plaintiff must allege a tort that is independent of a breach of the parties' contract. *Dantzler Lumber & Exp. Co. v. Bullington Lumber Co.*, 968 F. Supp. 1543, 1547 (M.D. Fla. 1997); *Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So. 2d 1012, 1013-014 (Fla. 3d DCA 1999). Misrepresentations relating to the alleged breaching party's performance of the parties' contract (i.e., fraud in the performance) do not give rise to an independent tort action since those misrepresentations go to the essence of the parties' agreement. *Dantzler Lumber & Exp. Co.*, 968 F. Supp. at 1546-47; *see Taylor v. Maness*, 941 So. 2d 559, 563 (Fla. 3d DCA 2006). "Even allegations that the fraud induced the plaintiff to perform additional acts and incur additional expenses will not raise the fraud to an acceptable level of independence." *Dantzler Lumber & Exp. Co.*, 968 F. Supp. at 1547.

Plaintiffs' entire argument in Count VII is effectively a claim for fraud in the performance of the parties' contract. Plaintiffs allege that Mr. Kromka misrepresented how he was spending "Treco time and resources," the reasons for certain expenditures, and the purpose of his interaction with potential investors. (Compl. ¶ 91.) There is no contention in the Complaint that these alleged misrepresentations induced Plaintiffs to hire Mr. Kromka. Rather, Plaintiffs' allegations are based entirely upon Mr. Kromka's performance of his duties as an

employee of "Treco."  Furthermore, Plaintiffs' contention that they were induced to perform additional acts (i.e., to continue to employ Mr. Kromka) and incur additional expenses (i.e., to continue to pay Mr. Kromka and reimburse certain expenses) do not make the alleged fraud an independent tort.  *See Dantzler Lumber & Exp. Co.*, 968 F. Supp. at 1547.

Accordingly, Count VII is barred by the economic loss rule and should be dismissed.

Dated:  November 12, 2009			Respectfully submitted,

*/s/     Thomas Meeks*
Thomas Meeks (Fla. Bar No. 314323)
e-mail: tmeeks@carltonfields.com
Adrian K. Felix (Fla. Bar No. 30846)
e-mail: afelix@carltonfields.com
CARLTON FIELDS, P.A.
100 S.E. Second Street, Suite 4000
Miami, FL 33131
Tel: 305-350-0050
Fax: 305-350-0055

Christopher M. Farella, Esq.
(admitted Pro Hac Vice)
e-mail: cfarella@stahlesq.com
Stahl Farella, LLC
220 St. Paul Street
Westfield, NJ 07090
Tel:     908.301.9001
Fax:    908.301.9008

*Attorneys for Richard Kromka*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s *Thomas Meeks*
Thomas Meeks

**SERVICE LIST**
Case No. 09-22987-CIV-KING/BANDSTRA
Treco International v. Richard Kromka and Francois Rodrigue
United States District Court Southern District of Florida

April L. Boyer
e-mail: april.boyer@klgates.com
Robert C. Leitner
e-mail: rob.leitner@klgates.com
K&L GATES LLP
Wachovia Financial Center – Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-539-3300
Fax: 305-358-7095
*Attorneys for Plaintiff*
*(via electronic filing )*

Anthony P. La Rocco (Pro Hac Vice)
e-mail: anthony.larocco@klgates.com
George P. Barbatsuly (Pro Hac Vice)
e-mail: george.barbatsuly@klgates.com
K&L GATES LLP
One Newark Center, 10th Floor
Newark, NJ 07102-5285
Tel: 973-848-4000
Fax: 973-848-400
*Attorneys for Plaintiff*
*(via electronic filing)*

Leon Nicholas Patricios
e-mail: lpatricios@zpwlaw.com
Zumpano Patricios & Winker, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Tel: 305-444-5565
Fax: 305-444-8588
*Attorney for Defendant Francois Rodrigue*
*(via electronic filing)*

Andrew L. Hurst, Esq. (Pro Hac Vice)
e-mail: ahurst@reedsmith.com
Reed Smith LLP
3110 Fairview Park Drive, Suite 1400
Falls Church, VA 22042
Tel: 202-414-9275
Fax: 202-414-9299
*Attorney for Defendant Francois Rodrigue*
*(via electronic filing)*