IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-CV-22987-KING

TRECO INTERNATIONAL S.A. and
TRECO INTERNATIONAL LTD.,

      Plaintiffs,

vs.

RICHARD KROMKA and
FRANCOIS RODRIGUE,

      Defendants.
_____/

## ORDER DENYING MOTIONS TO DISMISS IN PART

THIS CAUSE comes before the Court upon Defendant Kromka and Defendant Rodrigue's Motions to Dismiss (DE #68 & 70).  Plaintiff has responded (DE #77) and Defendants have each filed a Reply (DE #82 & 83).

**I.**    **Introduction**

The allegations in Plaintiffs' First Amended Complaint (DE #65) are too numerous to recount fully here.  Briefly, Plaintiffs are companies that sought to partner with xG Technology, Inc. with the purpose of deploying a network of base stations to be used for a particular type of patented wireless technology that was developed by xG.  To facilitate the financing of this project, Plaintiffs hired Defendants Kromka and Rodrigue to recruit investors for the project. Plaintiffs allege that, instead of working with Plaintiffs' best interests in mind, Defendants planned to use the confidential information that Plaintiffs gave them, create their own company, and lure the investors away from Plaintiffs.  After Defendants resigned from their employment with Plaintiffs, Plaintiffs filed this lawsuit, alleging various causes of action.  Each Defendant

has filed a separate motion to dismiss, and each argument therein will be addressed in turn.

## II.     Kromka's Motion to Dismiss

### A.     Florida's Uniform Trade Secrets Act ("FUTSA")

Kromka's first argument is that Plaintiffs have failed to state a claim under Florida's Uniform Trade Secrets Act ("FUTSA"). The FUTSA, codified at chapter 688 of the Florida Statutes, prohibits the misappropriation of trade secrets. Definitions of the relevant terms are then provided.[1] Kromka makes several specific sub-arguments, each of which will be addressed in turn.

### 1.     Describing Trade Secrets with Particularity

Kromka's first argument is that Plaintiffs have failed to describe the trade secrets with particularity. A plaintiff has the burden to describe the alleged trade secret with reasonable

---

[1] "As used in ss. 688.001-688.009, unless the context requires otherwise:
(1) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.
(2) "Misappropriation" means:
        (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
        (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
                1. Used improper means to acquire knowledge of the trade secret; or
                2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
                        a. Derived from or through a person who had utilized improper means to acquire it;
                        b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
                        c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
                3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.
(3) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.
(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
        (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
        (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

particularity. *Levenger Co. V. Feldman*, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007). The allegations specific to this issue state that Kromka became familiar with the development, structure, feasibility, and marketing of the xMax network and timing of its release, but Kromka claims that Plaintiffs never allege the exact information that they claim was misappropriated.

However, a party proceeding under FUTSA need only describe the misappropriated trade secrets with "reasonable particularity." *Id.* Moreover, "[w]hether a particular type of information constitutes a trade secret is a question of fact." *Calkins v. IPD Analytics, L.L.C.*, 2009 U.S. Dist. LEXIS 115461, *11 (S.D. Fla. Nov. 25, 2009). *See also Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) ("The term trade secret is one of the most elusive and difficult concepts in the law to define. The question of whether an item taken from an employer constitutes a trade secret is of the type normally resolved by a fact finder after full presentation of evidence from each side." (citations and quotations omitted)).

Here, Plaintiffs have satisfied that burden. The Complaint describes with reasonable particularity the information alleged to be misappropriated, including: (1) confidential information on the development, structure and marketing of the xMax network (D.E. # 65, ¶ 25); (2) the timing of the xMax network's commercial deployment (D.E.# 65, ¶ 25); (3) technical information about the feasibility of the xMax network obtained through a highly confidential and high-level due diligence report and through discussions with xG researcher and development and engineering personnel (D.E. # 65, ¶ 26); (4) the Infrastructure Agreement - Defendant Kromka indicated that he was planning to send Beechtree the confidential Infrastructure Agreement (D.E. # 65, ¶ 44); and (5) the Townes letter - Defendant Kromka improperly disclosed the Letter of Intent between xG and Townes to Beechtree and then the deal fell through (D.E. # 65, ¶ 82). Thus, Plaintiffs have described the information with sufficient particularity to avoid dismissal on

this basis.

### 2. The Information Was Not Generally Known to Third Parties

Defendant Kromka next argues that the information that Plaintiffs claim was misappropriated was available and accessible to the general public because xG issued numerous press releases discussing the information. Also, xG's CEO, Rick Mooers, publicly discussed the details of xG's product, marketing, and deployment plans. Thus, Kromka argues, the information could not have been confidential or secret because it was previously provided by xG to various media outlets. *See, e.g., Tedder Boat Ramp Sys., Inc. v. Hillsborough County, Fla.*, 54 F. Supp. 2d 1300, 1303 (M.D. Fla. 1999)

However, to support this argument Defendant Kromka relies exclusively on a series of internet articles which he claims disclose the confidential information. This information does not appear in the Complaint, and accordingly the Court cannot consider it when resolving a motion to dismiss. *Thaeter v. Palm Beach County Sheriff 's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto."). Thus, Kromka is not entitled to dismissal on this basis.

### 3. Plaintiffs Took Reasonable Steps to Protect the Trade Secrets

Defendant Kromka next claims that Plaintiffs failed to state through detailed factual allegations that they took reasonable steps to protect the trade secrets, as required by the FUTSA. He asserts that Plaintiffs only offer general examples of efforts taken, such as instructing Defendants not to disclose the information to third parties. He also claims that the only example Plaintiffs provide of their efforts to maintain the secrecy of the trade secrets is the Non-Disclosure Agreement.

However, whether a party has taken reasonable steps under the circumstances to preserve

4

its trade secrets is a factual inquiry that cannot be resolved on a motion to dismiss. *See Furmanite*, 506 F. Supp. 2d at 1141 ("Courts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets."). Moreover, the Complaint indicates that Plaintiffs did in fact take reasonable steps to protect the information. Both Treco and xG carefully limited dissemination of the information only to those trusted employees and others who needed to know to carry out the purposes of the Infrastructure Agreement, a highly confidential document. (D.E. # 65, ¶ 28). Also, Defendants were repeatedly instructed by Treco and xG to maintain the confidentiality of this information. (D.E. # 65, ¶ 28). Finally, Kromka's assertion that he was not personally a part of the Non-Disclosure Agreement is without merit. The Amended Complaint states that "[a]ll employees of Treco, including Kromka and Rodrigue, are covered by this confidentiality obligation. By signing this Non-Disclosure Agreement, Kromka confirmed his understanding that confidential information includes but is not limited to proprietary, financial and commercial information belonging to xG or Treco." (D.E. # 65, ¶ 29).

Thus, the Complaint alleges that Plaintiffs took reasonable steps to protect the information by having Kromka sign the Non-Disclosure Agreement and instructing Defendants not to disclose the information to third parties. Because the final resolution of this issue is a factual question, Kromka is not entitled to dismissal on this basis.

### 4. The Unauthorized Third Parties

Kromka's final argument under the FUTSA is that Plaintiffs have failed to state a claim for misappropriation because they have not identified the unauthorized third parties to whom Kromka allegedly disclosed the information. This argument is without merit. As detailed in the Amended Complaint, Kromka misappropriated Plaintiffs' trade secrets by disclosing them to Beechtree and others, not to further Plaintiffs' interest under the Infrastructure Agreement but in

5

an effort to try and take over xG (D.E. # 65, ¶ 44). Moreover, the Complaint states that, at a September 3, 2009 meeting, Beechtree representatives revealed to xG's CEO that Beachtree had been provided with this information (D.E. # 65, ¶ 76). Thus, Kromka is not entitled to dismissal of the FUTSA claim.

### B.    Breach of Fiduciary Duty

Kromka's second argument is that Plaintiffs have failed to state a claim for breach of fiduciary duty. "The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).[2]  Kromka argues that Plaintiffs have not sufficiently alleged that Kromka owed a fiduciary duty to Plaintiffs. The Court disagrees.    Although Plaintiffs have not alleged that Kromka was an officer or director, and not all employees owe fiduciary duties to their employers, Plaintiffs have sufficiently alleged that they placed Kromka in a position of trust and confidence, that Kromka accepted that position and promised to act in Plaintiffs' best interests, and that Kromka failed to do so. *See Furmanite*, 506 F. Supp. 2d at 1149 ("However, an employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment. . . . An employee does not have to be managerial in order to have this duty of loyalty."). Thus, under these circumstances, Plaintiffs have sufficiently alleged a breach of fiduciary duty.

### C.    Tortious Interference with Contract and Business Relationship

Kromka's next argument is that the claim for tortious interference with contract should be dismissed because it fails to allege all the elements of that claim. "A claim for interference with

---

[2] The Court determines that Florida law applies to this claim. *See Mukamal v. Bakes*, 383 B.R. 798, 815-817 (S.D. Fla. 2007).

a contractual relationship requires: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1103 (S.D. Fla. 2000). Kromka contends that this count fails because Plaintiffs have failed to plead the third element—that is, that Kromka intentionally procured a breach of the contract between Plaintiff and xG. Plaintiffs' only argument in response is to cite to *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 2007 U.S. Dist. LEXIS 80788, *29 (S.D. Fla. Oct. 31, 2007), which states that "Florida law does not require that a party show an actual breach of contract occurred in order to succeed on that tortious interference claim." However, this statement in *Slip-N-Slide* was referring to tortious interference with business relationship, not tortious interference with contract. In fact, a review of the Complaint reveals that Plaintiffs have not alleged a breach of their contract with xG (or any other contract). At most, Plaintiffs have alleged that Kromka attempted to procure the contract's breach, but the element requires that Kromka actually succeed. Therefore, Count IV—tortious interference with contract—is dismissed with prejudice.

Kromka also argues that the claim for tortious interference with business relationship should be dismissed because Kromka had a supervisory interest in the relationship with which he is accused of interfering. The elements of this claim are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999). Moreover, "[f]or the interference to be unjustified, the interfering defendant must be a third party, a stranger to the

business relationship." *Id.* "A defendant is not a stranger to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quotations and citations omitted). Finally, "[t]he fact that [Kromka] may have harbored some 'personal malice or ill-will' towards [Plaintiffs] does not transform this case into one for tortious interference." *Id.*

Here, although Plaintiffs have not specifically pled that Kromka had a supervisory interest in the business relationship, the Complaint makes clear that he did have one. Kromka was hired by Plaintiffs and given a seat on xG's board of directors. His specific assignment was to recruit investors and assist in the deployment of a new wireless communication network. Thus, he was put in charge of developing certain business relationships, and was a member of the relationship between Plaintiffs and xG. He had a direct beneficial and economic interest in these relationships. Thus, Plaintiffs have failed to state a claim for tortious interference with business relationship, and therefore Count V is dismissed with prejudice.

**D.    Unjust Enrichment**

"The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1242 n. 4 (Fla. 2004) (quotations and citations omitted). Kromka argues that Plaintiffs' claim for unjust enrichment should fail because Plaintiffs have not alleged exactly what "benefit" was conferred to Kromka. However, a review of the Complaint reveals that Plaintiffs have alleged that they conferred numerous benefits, including paying Kromka a salary and a living allowance. Thus, Kromka is not entitled to dismissal of this claim.

### E.    Fraud and Negligent Misrepresentation

With regard to the fraud claim, Kromka argues that Plaintiffs have not identified with particularity the statements which are alleged to be false, in accordance with Federal Rule of Civil Procedure 9(b). However, a review of the Complaint reveals that Plaintiffs have alleged numerous specific false statements, including statements regarding Kromka's ability to recruit investors, Kromka's need for a housing allowance, Kromka's progress in obtaining investors, and Kromka's actions with respect to obtaining financing. Thus, Kromka's argument on this point is without merit.

Next, Kromka argues that the fraud and negligent misrepresentation claims are barred by the economic loss rule. However, the economic loss rule does not bar intentional torts such as fraud. *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532, 543 n. 3 (Fla. 2004) ("Intentional tort claims such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent generally remain viable either in the products liability context or if the parties are in privity of contract."). With regard to negligent misrepresentation: When a party in a contractual relationship alleges that the other party has made false statements, an action based on those false statements may only be brought for a non-intentional tort that is independent of the contractual relationship. *See Bankers Mutual Capital Corp. v. United States Fidelity & Guarantee Co.*, 784 So.2d 485, 489 (Fla. 4th DCA 2001). Because Plaintiffs have neither alleged the parties had an express contract nor brought an action for breach of contract, the exact contours of the contractual relationship remain unclear. Thus, it would be premature to dismiss this count at this stage of the litigation.

## III.    Rodrigue's Motion to Dismiss

### A.    Failure to State a Claim under FUTSA

Rodrigue's first argument is the same as Kromka's; namely, that Plaintiffs have failed to

plead the requisite facts with particularity. For the reasons stated above, this argument is without merit.

**B.      Standing to Assert a Claim under FUTSA**

Rodrigue also argues that Plaintiffs do not have standing to assert a claim under FUTSA because they have not be plead that Plaintiffs owned the trade secrets the Defendants allegedly misappropriated. Rather, Rodrigue argues, the trade secrets were owned by xG, which is not a party to this action. This argument is without merit. Plaintiffs must establish that they owned or possessed the secret information and took reasonable steps to protect its secrecy. *See Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F.Supp.2d 1271, 1291 (S.D. Fla. 2001). No requirement of ownership appears in the statute, and as stated above, Plaintiffs have sufficiently pled the elements of a cause of action under FUTSA. Thus, Rodrigue is not entitled to dismissal on this basis.

**C.      Breach of Fiduciary Duty**

Finally, Rodrigue argues that the claim for breach of fiduciary duty should be dismissed. For the reasons stated above denying Kromka's motion to dismiss on this basis (section II.B), Rodrigue is not entitled to dismissal on this basis.

**IV.    Conclusion**

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that:

1.      Kromka's Motion to Dismiss (DE # 70) is hereby **GRANTED in part and DENIED in part, as follows:**

    a.      Count IV (Tortious Interference with Contract) and Count V (Tortious Interference with Business Relationships) are hereby

**DISMISSED WITH PREJUDICE.**[3]

      b.    Kromka's Motion to Dismiss is **DENIED** in all other respects.

2.    Rodrigue's Motion to Dismiss (DE #68) is hereby **DENIED** in its entirety.

3.    Both Defendants shall file an Answer to the Complaint **on or before April 26, 2010.**

    **DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida, this 7th day of April, 2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**Cc:**
**Counsel for Plaintiff**
April Lynn Boyer
K&L Gates LLP
Wachovia Financial Center Suite 3900
200 S Biscayne Boulevard
Miami, FL 33131-2399
305-539-3380
Fax: 358-7095
Email: april.boyer@klgates.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Robert Clayton Leitner , II
K&L Gates LLP
Wachovia Financial Center Suite 3900
200 S Biscayne Boulevard
Miami, FL 33131-2399
305-539-3300
Fax: 305-358-7095
Email: rob.leitner@klgates.com

---

[3] Because Plaintiffs have already amended their Complaint once, and because the Complaint is highly detailed, these claims are dismissed with prejudice.

11

**Counsel for Defendants**
Thomas Meeks
Carlton Fields, P.A.
100 S.E. Second Street
Suite 4000
Miami, FL 33131
305-530-4063
Fax: 305-530-0055
Email: tmeeks@carltonfields.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Christopher M. Farella
Stahl Farella LLC
220 St Paul Street
Westfield, NJ 07090
908-301-9001
Fax: 908-301-9008
Email: cfarella@stahlesq.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Andrew L. Hurst
Reed Smith LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
202-414-9275
Email: ahurst@reedsmith.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Leon Nicholas Patricios
Zumpano Patricios & Winker, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
305-444-5565
Fax: 444-8588
Email: lpatricios@zpwlaw.com
ATTORNEY TO BE NOTICED